# Doyle TAYLOR *v.* LUBRITECH

CA 01-79                                            54 S.W.3d 132

Court of Appeals of Arkansas
Division IV
Opinion delivered September 12, 2001
[Petition for rehearing denied October 24, 2001.]

*Davis, Mitchell & Davis*, by: *Gary Davis*, for appellant.

*Judy W. Rudd*, for appellee.

OLLY NEAL, Judge. This is an appeal from a decision of the Arkansas Workers' Compensation Commission finding that the average weekly wage of the decedent was $761.42 and denying dependency death benefits to the decedent's stepgrandson. On appeal, the appellant argues that the Commission erred in its failure to include the decedent worker's health insurance allowance, bonus, and vacation pay in the average weekly wage calculation and that' the Commission erred in its failure to recognize a step-grandchild as a dependent entitled to workers' compensation death benefits. We affirm the Commission.

Doyle Taylor worked as a truck driver for Lubritech. On April 18, 1997, Mr. Taylor died in a work-related accident. He was survived by his wife, Wilma Taylor, a stepson, Gerry Louis Coins, and a stepgrandson, Austin Coins. Travelers Insurance Company, appellee's insurance carrier, contested the compensability of the death. On September 25, 1997, an Administrative Law Judge of the Workers' Compensation Commission found the injury compensable. Travelers Insurance Company paid dependency death benefits

to Mrs. Taylor ($667 bi-weekly) and Austin Coins ($286 bi-weekly) based on an average weekly wage calculated to be $953. Travelers later reduced the payments to $488 and $206 respectively. Travelers justified the reduction in benefits based on a decision that Mr. Taylor's average weekly wage was actually $761.42 rather than $953. Travelers and Lubritech also argued that Austin Coins was not entitled to any benefits because he was a step-grandchild; therefore, he was not a dependent under Arkansas Code Annotated section 11-9-522 (Supp. 1999). The ALJ found that the insurance, bonus, and vacation pay were not part of the decedent's average weekly wage and that Austin Coins was ineligible for dependency-death benefits. This decision was adopted and affirmed by the full commission on October 27, 2000.

## Standard of Review

■ This court reviews decisions of the Arkansas Workers' Compensation Commission to see if they are supported by substantial evidence. *Smith v. County Market/Southeast Foods*, 73 Ark. App. 333, 44 S.W.3d 737 (2001). Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). If reasonable minds could reach the result found by the Commission, we must affirm the decision. *Wal-Mart Stores, Inc. v. Brown*, 73 Ark. App. 174, 40 S.W.3d 835 (2001).

## Calculation of Average Weekly Wage

■■ Appellant's first argument on appeal is that the Workers' Compensation Commission erred in its failure to include the decedent worker's health insurance allowance, bonus, and vacation pay in the average weekly wage calculation. Whether the decedent's health insurance allowance, bonus, and vacation pay should be included in the calculation of decedent's average weekly wage turns on whether he was a piece-rate worker. A piece-rate worker is one who is paid on the basis of the quantity of work done. *Mamika v. Barca*, 80 Cal. Rptr.2d 175 (1998). Wilma Taylor testified the decedent was paid by the mile. Lubritech presented evidence showing that decedent's pay varied according to the miles he drove. This variance indicates decedent was paid by the actual miles driven. The evidence clearly establishes decedent's pay was based upon the number of miles driven; therefore we hold decedent, a truck driver paid by the mile, was a piece-rate worker.

█ Arkansas Code Annotated section 11-9-518(a)(2) (Repl. 1996), provides that the average weekly wage of a piece-rate worker shall be calculated as follows:

> (2) Where the injured employee was working on a piece basis, the average weekly wage shall be determined by dividing the earnings of the employee by the number of hours required to earn the wages during the period not to exceed fifty-two (52) weeks preceding the week in which the accident occurred and by multiplying this hourly wage by the number of hours in a full-time workweek in the employment.

In the case at bar, both parties rely on *Tabor v. Levi Strauss & Co.*, 33 Ark. App. 71, 801 S.W.2d 311 (1990). In *Tabor*, fringe benefits are defined as bonuses, vacation pay, holiday pay, medical insurance, life insurance and weekly disability insurance. *Id.* In *Tabor* we held that fringe benefits are not included in the calculation of the average weekly wage of a piece-rate worker. *Id.* We reached this decision based on the statutory method of determining the average weekly wage of an employee working on a piece-rate basis. Under the statute, "earnings are to be divided by the number of hours required to earn the wages." *Id.* In *Tabor*, we found that Tabor was not required to work a certain number of hours to receive her fringe benefits; therefore, we held that under our statute, fringe benefits are not included in the calculation of the average weekly wage of a piece-rate worker. *Id.*

█ Here, decedent received a separate check for health insurance because he could not receive coverage under his employer's plan due to his high blood pressure. The evidence established that regardless of the number of hours worked, decedent would receive his insurance benefits totaling $339.70. The evidence also indicates that decedent was not required to work a certain number of hours to receive his bonus and vacation pay. Notwithstanding the separate payment for health insurance, the health insurance, bonus, and vacation pay are fringe benefits as defined by Tabor. No hours were required to be worked to receive the fringe benefits: therefore, we hold that, under our statute, decedent's fringe benefits of insurance allowance, bonus, and vacation pay should not be included in the calculation of his average weekly wage.

### Whether A Step-grandchild Is Entitled
### to Receive Dependency Death Benefits

Appellant's second argument on appeal is that the Commission erred in its failure to recognize a step-grandchild as a dependent entitled to workers' compensation death benefits. Arkansas Code Ann. § 11-9-527(c) (Repl. 1996), provides:

> (c) *Beneficiaries — Amounts.* Subject to the limitations as set out in §§ 11-9-501 to 11-9-506, compensation for the death of an employee shall be paid to those persons who were wholly and actually dependent upon the deceased employee in the following percentage of the average weekly wage of the employee and in the following order of preference:
>
> > (1)(A)(i) To the widow if there is no child, thirty-five percent (35%), and the compensation shall be paid until her death or remarriage.
> >
> > (2) To the widow or widower if there is a child, the compensation payable under subdivision (c)(1) of this section and fifteen percent (15%) on account of each child;

Prior to Act 796 of 1993, Arkansas Code Annotated section 11-9-102(10) (1987) defined child as "a natural child, a posthumous child, a child legally adopted prior to injury of the employee, a stepchild, an acknowledged illegitimate child of the deceased or spouse of the deceased, and a foster child." Grandchild was defined as "a child of a child as defined in subdivision (10). . . ." Ark. Code Ann. § 11-9-102(10)(A) (1987). Also under the old statute, the definitions of brother and sister included stepbrother and stepsister. The old statutory definitions suggest that a step-grandchild was included. After Act 796, the definition of child remained the same but amended Arkansas Code section 11-9-102 no longer contained the broad definition of brother, sister, and grandchild that included stepbrother, stepsister, and impliedly, step-grandchild. However, Arkansas Code Annotated section 11-9-527(c)(5) does list brothers, sisters, grandchildren, and grandparents as beneficiaries.

■■ Arkansas Code section 11-9-704(c)(3) (Repl. 1996) states that we are to construe the workers' compensation statutes strictly. Strict construction requires that nothing be taken as intended that is not clearly expressed. *Hapney v. Rheem Mfg. Co.*, 67

Ark. App. 8, 992 S.W.2d 151 (1999). The doctrine of strict construction is to use the plain meaning of the language employed. *Wheeler Const. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001).

We must construe Arkansas Code Annotated sections 11-9-527 and 11-9-102(2) using the plain meaning of the language used by the legislature. The word "step-grandchild" is absent from the language of both Arkansas Codes Annotated sections 11-9-527 and 11-9-102(2). The word grandchild is conspicuously absent from the current statutory definitions in Arkansas Code Annotated section 11-9-102. We hold that the Legislature did not include a step-grandchild as a covered dependent under the statute. Applying the plain meaning of the statutes, we hold that a step-grandchild is not a dependent under the workers' compensation statutes. Because a step-grandchild is not cognizant under the statute as a dependent, we do not reach the issue of whether Austin Coins was "wholly and actually" dependent.

Accordingly, we affirm.

STROUD, C.J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I concur with the result in this case because I believe reasonable minds could conclude that our legislature did not intend to include step-grandchildren as recipients of death dependency benefits when it enacted Act 796 of 1993. However, I write separately because the applicable statutes in this case reflect an anti-worker, anti-family bias that I do not condone and refuse to ignore.

The term "child" is defined under both pre-Act 796 and post-Act 796 law as "a natural child, a posthumous child, a child legally adopted prior to the injury of the employee, a stepchild, an acknowledged illegitimate child of the deceased or of the spouse of the deceased, and a foster child." Ark. Code Ann. §§ 11-9-102(10) (1987) & 11-9-102(2) (Supp. 1999). Under pre-Act law, brother and sister were defined to include stepbrothers and stepsisters. *See* Ark. Code Ann. § 11-9-102(10)(B)(1987). In addition, under pre-Act law, the definition of parent included a grandparent and grandchild was defined to include "a child of a child defined in subdivision (10) of this section." *See* Ark. Code Ann. § 11-9-102 (10)(B) & (11) (1987).

Thus, under pre-Act law, the term child was interpreted to include stepchild, the term brother to include stepbrother, the term sister to include stepsister, and the term grandchild was defined so broadly as to arguably include "step-grandchild." While Act 796 retained the definition of child that includes a stepchild, it eliminated the definitions of parent, grandparent, brother, and sister. There is no commentary indicating whether by doing so our legislature anticipated coverage for or intended to eliminate coverage for step-grandchildren. However, we are required to strictly construe workers' compensation statutes. *See* Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996). Because the legislature removed the broad definitions of brother, sister, and grandparent, I agree that a strict reading of the post-Act statutes supports the Commission's finding that the legislature intended to exclude step-grandchildren as recipients of death dependency benefits as a matter of law.

Nonetheless, I disagree with the notion, apparently held by the Commission, that in order for a child to be considered wholly and actually dependent upon a worker within the meaning of the workers' compensation statutes, the worker must have a legal guardianship over the child or claim him on his income taxes. It is a reality of life in Arkansas and elsewhere that many grandchildren reside with and are dependent upon their grandparents, but it is equally true that many of these relationships are never legally formalized. Whether a deceased employee was a legal guardian of a child is not determinative of whether a child was wholly and actually dependent upon the employee. The Commission would not slavishly award benefits to the child of a worker who had a legal obligation to a child but provided no support to that child. Conversely, a worker should not be required to establish legal guardianship in order for a child to be found wholly and actually dependent upon him. Whether a child is wholly and actually dependent is a question of fact, not of law. *See Hoskins v. Rogers Cold Storage*, 52 Ark. App. 219, 916 S.W.2d 136 (1996).

Finally, I do not agree that the fact that Mrs. Taylor worked outside of the home should be controlling or even relevant to a determination as to whether Austin was not wholly and actually dependent upon the decedent. It would be ludicrous to assert that the legislature intended to provide dependency benefits only to the dependents of those deceased workers whose spouses are not employed outside of the home. Moreover, the remedial purposes of the workers' compensation statutes are not furthered by punishing a caregiver for working outside of the home.