2010 Ark. App. 65

**Cathy EVANS, Appellant**

v.

**BEMIS COMPANY, INC., Fidelity & Guaranty Insurance Co., and Death & Permanent Total Disability Trust Fund, Appellees.**

**No. CA 09A–653.**

Court of Appeals of Arkansas.

Jan. 20, 2010.

Law Offices of Bennett & Williams, Conway, by: Chip Leibovich, for appellant.

Friday, Eldredge & Clark, LLP, Little Rock, by: Guy Alton Wade, for appellees.

RITA W. GRUBER, Judge.

Both parties have appealed a decision of the Arkansas Workers' Compensation Commission denying claimant's request for permanent total-disability benefits and awarding claimant benefits for additional

medical treatment. Cathy Evans sustained a compensable right wrist injury, for which she received temporary total-disability benefits and a 30% impairment rating. Her employer, Bemis Company, Inc., accepted and paid compensation for the impairment rating but disputed Ms. Evans's entitlement to permanent total disability benefits and benefits for additional medical treatment. On appeal, Ms. Evans contends that the Commission erred in denying her request for permanent total disability benefits, and Bemis cross-appeals, contending that the Commission erred in awarding additional medical benefits. We hold that substantial evidence supports the Commission's findings and affirm.

On December 14, 2004, Ms. Evans, who was forty-one years old at the time of the injury, fractured her right wrist while operating a baler for Bemis. She remained in a cast for thirteen weeks but returned to light-duty work two weeks after the injury, performing work with her left hand. Due to continuing complaints of pain, stiffness, and swelling, Ms. Evans was evaluated for treatment by Dr. Michael Moore, an orthopaedic surgeon specializing in hands. Ms. Evans continued to work at Bemis until Dr. Moore performed surgery on January 20, 2006. After her cast was removed, she suffered from a constant burning, stinging sensation in her right hand. She was diagnosed with reflex sympathetic dystrophy (RSD), given pain medication, and treated with nerve blocks by Dr. Kenneth Rosenzweig at Arkansas Specialty Pain Management Center. Dr. Reginald Rutherford, one of Dr. Moore's partners, continued to manage the treatment for Ms. Evans's RSD. Ms. Evans developed depression and, in May 2006, Dr. Rutherford prescribed Lexapro in addition to the pain medication Ms. Evans was taking for the RSD.

A bone scan taken on June 2, 2006, indicated that the RSD had improved. Dr. Rutherford ordered a Functional Capacity Evaluation (FCE), which was performed by Charles Davidson on June 23, 2006. The results of the FCE indicated unreliable effort. On the basis of his evaluation, Mr. Davidson determined that Ms. Evans could work in a light-duty capacity and that she was only one pound away from working at the medium-level capacity.

On August 10, 2006, Dr. Moore opined that Ms. Evans would not benefit from further surgical treatment and that she had reached maximum medical improvement; he assigned a 30% impairment of the right wrist and hand on August 22, 2006. Ms. Evans then requested and was granted a one-time change of physician to her family physician, Dr. Jeffrey Reinhart. Dr. Reinhart referred Ms. Evans to Dr. Ghulam Khaleel, a neurologist, for evaluation and management of her RSD. He opined that her condition had "poor prognosis" and that she would not be able to use her right hand to earn a meaningful livelihood. He strongly recommended her for approval of complete disability. Dr. Reinhart also referred Ms. Evans to Dr. Stephen Broughton, a psychiatrist, who recommended medical management. Bemis did not pay for Ms. Evans's visits to either Dr. Khaleel or Dr. Broughton.

At a hearing before an administrative law judge (ALJ) on April 24, 2008, the parties disputed Ms. Evans's entitlement to permanent total-disability benefits and to continued medical benefits. The ALJ found that Ms. Evans failed to prove by a preponderance of the evidence that she was entitled to permanent total disability benefits because she failed to prove that she was "unable to earn *any* meaningful wages in any capacity." While the ALJ agreed that Ms. Evans had significant impairment to her right wrist and hand, the

ALJ deemed her impairment to be limited to her right hand and found her capabilities far exceeded her disabilities. The ALJ found it significant that Ms. Evans continued to work for Bemis for over a year after the injury, using only her left hand. The ALJ also referred to Dr. Moore's reports after the surgery stating that Ms. Evans could work in a light-duty capacity and to Mr. Davidson's FCE concluding that Ms. Evans was capable of performing light-duty work. The ₄ALJ reasoned that Ms. Evans was young; had no medical problems or impairments in any other area; was able to speak, hear, and see without impairment; could read; and had an extensive work history, including numerous managerial jobs. The ALJ also recognized that Ms. Evans testified that she had made no effort to look for work that she might be able to do, even on a part-time basis. Finally, the ALJ noted that Ms. Evans used her hands extensively when testifying. The ALJ stated that she was more persuaded by the opinions of Dr. Moore and Mr. Davidson as to Ms. Evans's ability to work than she was the opinions of Dr. Reinhart and Dr. Khaleel that Ms. Evans was unable to work in any capacity.

The ALJ did, however, award additional medical benefits to Ms. Evans. The ALJ stated that all of Ms. Evans's treating doctors agreed that she continued to suffer from RSD in her right wrist and hand and that she needed ongoing medical treatment in the form of pain management. In addition, Dr. Reinhart and Dr. Broughton recommended further treatment for the psychological disorders associated with her RSD in the form of medications. The ALJ noted that this treatment was consistent with the opinion of Dr. Rutherford that Ms. Evans was exhibiting symptoms of depression. The ALJ found that the preponderance of the medical evidence demonstrated that Ms. Evans's ongoing treatment with Dr. Reinhart, Dr. Khaleel, and Dr. Broughton was reasonably necessary and related to her compensable injury. The Commission adopted the findings and conclusions of the ALJ and affirmed her decision.

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.,* 70 Ark.App. 319, 17 S.W.3d 817 (2000). ₅However, here the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *See Death & Permanent Total Disability Trust Fund v. Branum,* 82 Ark.App. 338, 107 S.W.3d 876 (2003). Thus, for purposes of our review, we consider both the ALJ's order and the Commission's order.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence, which is evidence a reasonable person might accept as adequate to support a conclusion. *See Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.,* 366 Ark. 297, 235 S.W.3d 499 (2006). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the same conclusions reached by the Commission. *Cedar Chem. Co. v. Knight,* 99 Ark.App. 162, 258 S.W.3d 394 (2007). Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health,* 343 Ark. 255, 33 S.W.3d 151 (2000).

## I. *Appeal*

On appeal, Ms. Evans contends that the Commission's decision to deny

her permanent total-disability benefits is not supported by substantial evidence and must be reversed. Permanent total disability means "inability, because of compensable injury ... to earn any meaningful wages in the same or other employment." Ark.Code Ann. § 11–9–519(e)(1) (Repl.2002). The burden of proving this inability to the Commission was on Ms. Evans. Ark.Code Ann. § 11–9–519(e)(2).

Ms. Evans's testimony demonstrated an extensive and varied work history, including significant restaurant and office management experience, sales experience, and billing experience. Further, Ms. Evans worked at Bemis for a year after she had been injured, using her left hand only. Dr. Moore, Ms. Evans's treating physician, stated in several letters written after her surgery that Ms. Evans could work in a light-duty capacity. Mr. Davidson, who performed a functional capacity evaluation of Ms. Evans after her surgery, also concluded that Ms. Evans was capable of performing light-duty work. While Ms. Evans presented the opinions of Dr. Reinhart and Dr. Khaleel that she was unable to work, the ALJ stated that she was more persuaded by the opinions of Dr. Moore and Mr. Davidson as to Ms. Evans's ability to work than she was the opinions of Dr. Reinhart and Dr. Khaleel that Ms. Evans was unable to work in any capacity. We hold that this constitutes substantial evidence to support the Commission's denial of permanent total-disability benefits.

## II. *Cross–Appeal*

■ On cross-appeal, Bemis contends that the Commission's determination that Ms. Evans is entitled to additional medical treatment is not supported by substantial evidence. Arkansas Code Annotated section 11–9–508(a) (Supp.2009) requires an employer to pay for medical treatment that is "reasonably necessary in connection with the injury received by the employee." The claimant bears the burden of proving that she is entitled to additional medical treatment. *Dalton v. Allen Eng'g Co.*, 66 Ark.App. 201, 206, 989 S.W.2d 543, 546 (1999). Bemis argues that neither Dr. Khaleel nor Dr. Broughton made additional treatment recommendations and that Dr. Reinhart simply provided periodic medication without any goal or plan. Thus, Bemis argues, any additional treatment is speculative rather than reasonable and necessary. Bemis contends that the Commission cannot base an award on such speculation and conjecture.

The ALJ's award, adopted by the Commission, directed Bemis to provide "continuing reasonable and necessary medical treatment" for Ms. Evans. This award was based on the ALJ's review of Dr. Reinhart's opinion that Ms. Evans needed ongoing medical treatment in the form of pain management and of the opinions of Dr. Broughton and Dr. Reinhart that she continue treatment of the psychological disorders associated with RSD in the form of medications. We note that, although Dr. Moore opined in a letter dated August 10, 2006, that Ms. Evans would not benefit from further surgical treatment, he said that he would defer to Dr. Rutherford's opinion as to whether she required further treatment for the RSD. In that same letter, Dr. Moore noted that Dr. Rutherford had recommended that Ms. Evans continue her current medications. In this case, the Commission awarded ongoing treatment in the form of medication for pain management and for treatment of the psychological disorders associated with RSD. Bemis was also directed to pay "continuing reasonable and necessary medical treatment" for Ms. Evans. Therefore, we hold that the decision of the Commission is supported by substantial evidence and we affirm.

Affirmed on appeal and on cross-appeal.

GLOVER and BROWN, JJ., agree.