2010 Ark. App. 466
**Gretchen SMALLWOOD, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Public Claims Division, Appellees.**

**No. CA 10–3.**

Court of Appeals of Arkansas.

June 2, 2010.

Eddie H. Walker, Jr., Walker, Shock & Harp, PLLC, Fort Smith, AR, for appellant.

Richard S. Smith, Arkansas Insurance Department, Little Rock, AR, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Gretchen Smallwood sustained an admittedly compensable injury to her head and neck while working for appellee Arkansas Department of Human Services on May 9, 2007. On that date, Ms. Smallwood fell backward in a chair, striking her head on the handle of a file cabinet and rendering her unconscious. There is no dispute regarding Ms. Smallwood's entitlement to continuing medical services or temporary total disability benefits accruing through October 11, 2007. The controversy in this case concerns Ms. Smallwood's contention that she is entitled to temporary total disability benefits from October 12, 2007, through a date yet to be determined.

After a hearing, the Administrative Law Judge denied Ms. Smallwood's request for additional temporary total disability benefits. The ALJ found that Ms. Smallwood failed to prove that she remained in her healing period after October 11, 2007, or that she continued to be disabled from performing employment as a result of her compensable injuries. On the issue of Ms. Smallwood's healing period, the ALJ found that there was no evidence that she has experienced any change in the extent of her physical compensable injuries since October 11, 2007, and that all of the medical treatment she has received after that date has been directed toward alleviating or reducing her chronic pain. The Workers' Compensation Commission affirmed and adopted the ALJ's opinion, and Ms. Smallwood now appeals. On appeal, she argues that the Commission's decision denying additional temporary total disability benefits is not supported by substantial evidence. We affirm.

Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *Poulan Weed Eater v. Marshall*, 79 Ark.App. 129, 84 S.W.3d 878 (2002). The healing period is that period for healing of an accidental injury that continues until an employee is as far restored as the permanent character of her injury will permit, and that ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition. *Id.* We have held that the persistence of pain is not sufficient in itself to extend the healing period. *Bray v. International Wire Group*, 95 Ark.App. 206, 235 S.W.3d 548 (2006). The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Poulan, supra.*

When an appeal is taken from the denial of a claim by the Workers' Compensation Commission, the substantial-evidence standard of review requires that we affirm the decision if the Commission's opinion displays a substantial basis for the denial of relief. *McDonald v. Batesville Poultry Equip.*, 90 Ark.App. 435, 206 S.W.3d 908 (2005). In determining the sufficiency of the evidence to support the findings of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if those findings are supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* It is the Commission's function to determine the credibility of witnesses and the weight to be given their testimony. *Whitten v. Edward Trucking/Corporate Solutions*, 87 Ark.App. 112, 189 S.W.3d 82 (2004). Fur-

ther, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000).

Ms. Smallwood testified that she began working for the appellee as a caseworker about nine months before she sustained her compensable injury. Her job included interviewing clients and desk work. After the May 9, 2007, accident, she sought medical treatment for her head and neck injury and was taken off work for a couple of months. Ms. Smallwood returned to work on July 2, 2007, but said that she continued to have symptoms related to the fall. Ms. Smallwood testified that these symptoms included loss of memory, neck pain, and excruciating headaches.

Ms. Smallwood testified that she continued to work until her doctor wrote her an off-work slip on October 12, 2007. Ms. Smallwood testified that she has not been physically able to work since that date. Ms. Smallwood has continued to be treated with conservative measures such as pain medication, physical therapy, massages, and trigger-point injections in her neck. While some of these treatments have provided temporary relief, Ms. Smallwood maintained that her headaches are severe enough to be disabling, and that as a result of her physical limitations she spends most of the day in bed. Ms. Smallwood did not think there was any work that she could be hired to perform.

Ms. Smallwood came under the care of numerous doctors and underwent extensive testing. Dr. Joseph Queeney reviewed an MRI performed on June 4, 2007, and detected degenerative disc disease and arthritic spurring in the cervical spine. There were no cervical herniations found. A CT scan of the head was performed

shortly after the compensable injury and was interpreted by Dr. Lamar Kyle as normal. Another CT scan was performed on January 18, 2008, which was also interpreted as normal. Dr. Duane Birky reported on February 5, 2008, that an EEG of the brain was normal.

On January 28, 2008, Dr. Birky reported that Ms. Smallwood had been bothered by headaches since sustaining her compensable injury on May 9, 2007. Dr. Birky noted an area of fairly hard swelling over the left occipital region, which was tender and causing pain. Dr. Birky's impression was posttraumatic occipital neuralgia, and he prescribed pain medication and recommended that Ms. Smallwood visit a pain clinic for an injection.

A May 5, 2008, progress note from the River Valley Musculoskeletal Center provided:

> Ms. Smallwood is seen back in the clinic for continued followup of cervicalgia secondary to muscle sprain and strain in the cervical spine. The patient states that at this point she is unchanged from the last time she was seen here. She states that the physical therapy does well for her for several hours but the pain returns unless she keeps up on her muscle relaxants and using her TENS unit. When last seen in this clinic we discussed getting an in-home cervical spine traction unit; however the patient at this point indicates that she never did get one. At this point we are going to issue her an order for a lifetime use of in-home traction unit. She can pick up one at this clinic on her way out. Also, we will follow her up in three months for reevaluation. No medications or therapies are written for at this time.

A progress note dated September 23, 2008, noted that a trigger-point injection afforded temporary relief and that deep-tissue cervical massages had been scheduled.

Ms. Smallwood was to be reevaluated in two months, and on November 24, 2008, it was reported that she would be referred for a left occipital nerve block in hopes of decreasing her symptoms.

In this appeal, Ms. Smallwood argues that the Commission erred in finding that she failed to prove entitlement to temporary total disability benefits from October 12, 2007, until a date yet to be determined. Ms. Smallwood submits that because the Commission affirmed and adopted the opinion of the ALJ, the Commission essentially arbitrarily ignored the medical evidence and denied her claim.

Ms. Smallwood contends that the medical evidence showed that she remains in her healing period. She references Dr. Birky's January 28, 2008, report, where Dr. Birky noted fairly hard swelling over the left occipital region. Ms. Smallwood argues that to conclude that further treatment for such swelling was not intended to improve her condition is not supported by substantial evidence. Ms. Smallwood further maintains that her injections and occipital nerve-block treatment were not only to reduce pain, but were intended to improve her condition. Ms. Smallwood asserts that much of the treatment she received after October 2007 has helped her, and that there is no medical opinion in the record that her healing period has ended or that she was able to return to work. Under such circumstances, she argues that the Commission's decision denying her claim for additional TTD must be reversed.

Contrary to Ms. Smallwood's argument, the fact that the Commission adopted the ALJ's findings of fact is not an indication that the Commission ignored the medical evidence. Under Arkansas law, the Commission is authorized to adopt the conclusions of the ALJ. *Rippe v. Delbert Hooten Logging,* 100 Ark.App. 227, 266 S.W.3d 217

(2007). In doing so, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Death & Permanent Total Disability Trust Fund v. Branum,* 82 Ark. App. 338, 107 S.W.3d 876 (2003). For purposes of our review, we consider both the ALJ's order and the Commission's order. *Id.*

Upon review of the Commission's findings and conclusions, we hold that its opinion displays a substantial basis for the denial of relief. While Ms. Smallwood continues to receive medical treatment related to her compensable injury, the Commission determined that she failed in her burden to show that she remained in her healing period beyond October 11, 2007, thus making her ineligible for continuing TTD benefits. Based on this record, we affirm that determination.

■ ⌐₇In a medical report dated October 10, 2007, Dr. Roy Russell diagnosed Ms. Smallwood with spinal canal stenosis and indicated that her prognosis was poor. Dr. Russell further noted that Ms. Smallwood has suffered no permanent impairment due to her work-related injury. The Commission found that Ms. Smallwood's subsequent treatments have been directed toward pain management as opposed to improving her underlying condition. This finding is supported by the medical evidence, as no doctor recommended surgery and the prescribed conservative treatment was aimed toward the alleviation of pain. The medical documentation indicated that measures such as pain medication, injections, physical therapy, and massages were successful in temporarily reducing symptoms. However, there was no medical opinion indicating that these treatments, which were periodically repeated, improved an underlying compensable condition causing the pain. Pain management that does not improve the underlying condition does not extend the healing period. *See Bray v. International Wire Group,* 95 Ark.App. 206, 235 S.W.3d 548 (2006). There was evidence from which the Commission could reasonably conclude that Ms. Smallwood's compensable condition had become stable and that nothing in the way of treatment would improve her condition.

■ To be entitled to temporary total disability benefits, the claimant must prove that she remains within her healing period and suffers a total incapacity to earn wages. *See Poulan Weed Eater v. Marshall,* 79 Ark.App. 129, 84 S.W.3d 878 (2002). We hold that the Commission provided a substantial basis for denying additional TTD benefits because ⌐₈Ms. Smallwood failed to prove that she remained within her healing period beyond October 11, 2007. Because we so hold, we need not address the Commission's alternative finding that Ms. Smallwood failed to prove that she suffered a total incapacity to earn wages.

Affirmed.

GRUBER and HENRY, JJ., agree.