N. MARK KLAPPENBACH, Judge
This is a workers'-compensation appeal in which the employer, appellant Arkansas Secretary of State (SOS), asserts that the decision to award benefits to the employee, appellee Ruby Young, is not supported by substantial evidence. SOS argues on appeal that the Workers' Compensation Commission (Commission) committed reversible error by finding (1) that Young was providing employment services at the time of her alleged injury; and (2) that there were objective medical findings to support the existence of a work-related injury. We affirm.
When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. Evans v. Bemis Co., Inc. , 2010 Ark. App. 65, 374 S.W.3d 51. This court must affirm the decision of the Commission if it is supported by substantial evidence. Id. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. Id. We reverse the Commission's decision only if we are convinced that fair-minded persons could not have reached the same conclusion with the same facts before them. Id. Questions regarding the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. Wall Farms, LLC v. Hulsey , 2017 Ark. App. 624, 534 S.W.3d 771.
The facts of this case are largely undisputed. Young is an administrative assistant in the Capitol Facilities Office for SOS. Her office is located in the basement of the Arkansas State Capitol building, and her work hours are from 8:00 a.m. to 5:00 p.m. Young's job requires that she prepare maintenance and repair work orders for the Capitol building, its associated grounds, and the Capitol Hill Apartments. Young's primary tasks at work are to answer telephone calls, check emails for work requests, and assign the appropriate person to the task.
On the morning of January 18, 2017, at approximately 7:45 a.m., Young arrived for work and parked in her assigned parking spot; it was raining. Young walked through an outside door leading to the Capitol basement. This door required a key card to gain entry. Young wiped her feet on a rug and then slipped and fell as she stepped off the rug and onto the marble floor. She hit the floor with her lower back, more to the left side. She got up and went to her office, and she began to experience low-back and hip pain five or six hours later. She reported this injury to her employer. Young sought treatment at UAMS the following Monday (five days after the fall) and x-rays taken at UAMS revealed *334 that Young had "significant soft tissue swelling" in her lumbar spine. A hip injury was ruled out, but Young was diagnosed with a lumbar sprain and sciatica and has undergone conservative treatment for ongoing back problems.
Young filed a claim for workers'-compensation benefits. SOS controverted Young's claim in its entirety. The primary issue was whether Young was performing employment services at the time she fell. A hearing was conducted on this claim.
Young's supervisor, Keith Diemer, testified that their office is responsible for the day-to-day operations of maintenance, including electrical, plumbing, heat and air conditioning, custodial care, lawn care, and all the exterior and interior upkeep for the Capitol building, its grounds, and the apartments where legislators live. Diemer testified that Young has a state-issued cell phone so that she can be reached if she is away from her desk and immediate assistance is needed; her desk phone can be transferred to her cell phone for that purpose. Diemer stated that Young has no work duties outside her regular office hours but that he would expect Young to do something immediately if someone advised her at 7:50 a.m. that there was a problem such as flooding in a bathroom. Diemer had experienced people approaching him as soon as he exited his vehicle, so he understood that this might happen to Young. Diemer was "pretty sure" that Young had received maintenance requests before 8:00 a.m. when she was in her office.
Young testified that she is often approached by someone requesting maintenance as she walks from her car to her office. She did not recall anyone talking to her about work-related issues on January 18, 2017, before she reached her office, but she remembered that other state employees saw her fall. Young explained that she fell onto her backside, she reported this injury to her employer that day, and her low back did not begin to hurt a lot until a few hours after the fall. Young testified about the course of her medical care. She submitted emails and medical records to substantiate her claim.
The administrative law judge (ALJ) found that Young had presented objective medical findings "at least including, but not necessarily limited to, 'significant soft tissue swelling' noted in the report of an x-ray of Ms. Young's back performed at UAMS on January 23, 2017." The ALJ found Young's testimony persuasive that she had no back pain before January 18; that her back began hurting later that day; that she emailed a coworker that afternoon to report having hip pain in the same area; and that she reported to the UAMS emergency room that she had experienced increasing back pain since she slipped and fell on a marble floor five days earlier.
The ALJ also found that Young had been performing employment services when she was injured because she was directly or indirectly advancing SOS's interests at the time she fell. The ALJ found that Diemer's testimony corroborated Young's assertion that she was subject to receiving work requests before 8:00 a.m. and before she reached her desk. The ALJ examined several appellate cases discussing when a claimant is or is not performing employment services and found that Young's situation was most akin to the claimant in Foster v. Express Personnel Services , 93 Ark. App. 496, 222 S.W.3d 218 (2006).
In Foster , our court held that an employee may be compensated for an injury that occurs even before she reaches her work station or before she is "on the clock" if she is performing a service that is required by her employer and is directly or indirectly advancing her employer's *335 interests. Foster, a temporary clerical worker, was injured in the service-bay area of McClarty Auto Mall at 7:50 a.m., ten minutes before her official work day began. The Foster opinion noted that she would have been required to perform her specific job duties while en route to her designated job site and was expected to advance her employer's interests away from her desk, even if Foster had not actually been engaged in work duties when she was injured. The Foster opinion rejected any application of the going and coming rule because Foster was already at the workplace; she was not driving to work nor was she injured in the parking lot.
SOS appealed the ALJ's decision to the Commission, which affirmed and adopted the ALJ's decision as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. SSI, Inc. v. Cates , 2009 Ark. App. 763, 350 S.W.3d 421. SOS appealed the Commission's decision to our court, and for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. See id.
SOS's first point on appeal is that there is no substantial evidence to support a finding that Young was performing employment services at the time she fell. Thus, the argument goes, any injury Young sustained is not compensable under Arkansas workers'-compensation law. We disagree.
In Arkansas workers'-compensation law, in order for an accidental injury to be compensable, it must arise out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). An employee is performing employment services when he or she is doing something that is generally required by his or her employer. Cont'l Constr. Co. v. Nabors , 2015 Ark. App. 60, 454 S.W.3d 762. We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. Pifer v. Single Source Transp. , 347 Ark. 851, 69 S.W.3d 1 (2002). The test is whether the injury occurred within the time and space boundaries of the employment when the employee was carrying out the employer's purpose or advancing the employer's interest, either directly or indirectly. Id. Moreover, whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. Webster v. Ark. Dep't of Correction , 2017 Ark. App. 558, 537 S.W.3d 731 ; Centers for Youth & Families v. Wood , 2015 Ark. App. 380, 466 S.W.3d 422.
SOS correctly asserts that as a general rule, a claimant who has fixed hours and places of employment is not performing employment services when the claimant is traveling between home and the job because this falls within the "going and coming rule." See Webster , supra. SOS also correctly states that generally speaking, an employee who is injured while walking to or from his or her vehicle in the parking lot before or after work is not performing employment services. See id. As stated, though, whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. Hudak-Lee v. Baxter Cty. Reg'l Hosp. , 2011 Ark. 31, 378 S.W.3d 77. In this instance, the "going and coming rule" has no application to Young because she had already arrived at work, parked her car, and entered the building where she worked.
We hold that reasonable minds could conclude as the Commission did here *336 in finding that Young was acting within the scope and course of her employment and directly or indirectly advancing her employer's interests when she slipped and fell. Whether the claimant is technically "on" or "off" the clock is not dispositive. See Barrett v. C.L. Swanson Corp. , 2010 Ark. App. 91, 2010 WL 307905. Young was expected to respond to work queries if she was approached away from her desk or before 8:00 a.m.; Young was inside the Capitol building, having entered through a door that required a key card to enter; and Young was on her way to her office. There is substantial evidence to support the Commission's conclusion, finding that Young was performing employment services at the time of her fall.
In its second point on appeal, SOS argues that there is no substantial evidence to support the finding that a compensable low-back injury exists. SOS argues that there is a lack of objective medical findings. Young responds first that this issue is not preserved for appellate review because the only issue litigated was whether she was performing employment services at the time of injury. We hold that this issue is preserved for appellate review because SOS controverted this claim in its entirety; there was extensive testimony and evidence about the nature, extent, and timing of Young's medical care; and the Commission found that there were objective medical findings to support the existence of a low-back injury. Young argues in the alternative that the Commission's findings on this issue are supported by substantial evidence. We hold that reasonable minds could come to the Commission's conclusion that objective medical findings support the existence of an injury to Young's low back.
Compensable injuries must be established by medical evidence supported by objective findings, Ark. Code Ann. § 11-9-102(4)(D), and objective findings are those that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Soft-tissue swelling can be an objective medical finding for purposes of workers' compensation. See Lexicon Holding Co. v. Howard , 2015 Ark. App. 292, 462 S.W.3d 696. In contrast, complaints of pain are not objective medical findings. Vaughn v. Midland Sch. Dist. , 2012 Ark. App. 344, 2012 WL 1718826. Here, Young did complain of hip and low-back pain, but those complaints were accompanied by documented "significant soft tissue swelling" in her lumbar spine. The interpretation given to medical evidence by the Commission has the weight and force of a jury verdict. Belcher v. River Valley Health & Rehab , 2012 Ark. App. 527, 2012 WL 4478397. The significant soft-tissue swelling is an objective medical finding. See Meister v. Safety Kleen , 339 Ark. 91, 3 S.W.3d 320 (1999). There is substantial evidence to support the Commission's finding.
Affirmed.
Whiteaker and Hixson, JJ., agree.